IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 15 CR 22 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| MICHAEL BONIN, ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

On January 16, 2015, the United States filed a criminal complaint against defendant Michael Bonin for falsely impersonating an officer of the United States and acting as such in violation of 18 U.S.C. § 912. On May 27, 2015, a grand jury returned a two count indictment against defendant. Count One charges defendant with pretending to be a United States Marshal and acting as such on January 15, 2013. Count Two charges defendant with pretending to be a United States Marshal and acting as such on December 4, 2014. Defendant has moved to dismiss the indictment. For the following reasons, the motion is denied.

## BACKGROUND

According to the affidavit attached to the criminal complaint, on January 15, 2013, at approximately 2:30 a.m., an off-duty Markham police officer was standing at a Speedway gas station when he observed a vehicle with activated red and blue emergency lights drive through a red light at an intersection. The vehicle pulled into the Speedway parking lot, where defendant exited the vehicle and entered the Speedway. Defendant allegedly told the off-duty police officer that he was a United States Marshal, opening his trench coat to reveal a handgun attached to his waist. Defendant refused to provide the officer with his law enforcement credentials.

The off-duty police officer proceeded to exit the Speedway, at which time he observed that defendant's vehicle was equipped with emergency lights, sirens, and several scanners. As the off-duty officer was reporting defendant's suspicious activity to the Markham Police Department, defendant entered his vehicle and drove off. Defendant was issued traffic tickets related to this incident, but was not charged with any other crimes.

The affidavit also states that on December 4, 2014, defendant was talking on his cellular telephone during a movie at a public movie theater. When other movie-goers requested that defendant end his telephone conversation, defendant allegedly responded by yelling that he was a United States Marshal and displayed a semi-automatic handgun that he was wearing on his belt. A badge was also observed on defendant's belt.

In response to the disturbance, Chicago police officers arrived at the movie theater, where they spoke to defendant outside the theater. The officers observed that defendant was wearing "full duty gear," including a gun, a star badge attached to his belt near his gun, and ammunition magazines. Defendant allegedly told one of the police officers that he was a United States Marshal. Defendant was allowed to return to the movie theater, where he allegedly yelled "look, I am a U.S. Marshal," upon re-entering the theater. The Chicago police officer subsequently asked defendant to leave the theater, at which time he was escorted from the movie theater premises.

## **DISCUSSION**

Defendant has been charged with two counts of violating 18 U.S.C. § 912. Section 912 provides that:

> Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or office thereof, and acts

as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

The statute creates two separate offenses: "(1) false impersonation of a federal official coupled with an overt act in conformity with the pretense and (2) false impersonation of a federal official coupled with demanding or obtaining a thing of value." United States v. Rippee, 961 F.2d 677, 678 (7th Cir. 1992). Defendant has been charged with the first offense, which the court will refer to as the "acts as such" offense.

Defendant argues that the indictment should be dismissed for three reasons. First, defendant contends that in light of United States v. Alvarez, 132 S. Ct. 2537 (2012), the "acts as such" offense is an unconstitutional violation of the First Amendment on its face. Second, defendant argues that the offense violates the First Amendment as applied to him and the facts of this case. Third, defendant contends that the indictment provides insufficient notice of the nature of the charges, and therefore violates the Sixth Amendment and Fed. R. Crim. P. 7(c)(1).

### A. Constitutional Challenges

Defendant argues that based on Alvarez the "acts as such" offense with which he is charged is unconstitutional both facially and as applied to the facts of this case. The court, however, will consider only defendant's facial challenges to the statute, because defendant's as-applied challenges are premature. See United States v. Caputo, 288 F. Supp. 2d 912, 917 (N.D. Ill. 2003) (holding that an "[a]s-applied review requires a court to review the specific facts in the case" and that "[t]hese types of factual determinations are not appropriately determined by a court in a pretrial motion"); see also United States v. Nagel, 559 F.3d 756, 759 (7th Cir. 2009) (noting that the district court had found that the defendant's as-applied arguments were not ripe

3

because the defendant had not yet been convicted); United States v. Cooper, 754 F. Supp. 617, 623 (N.D. Ill. 1990) (holding that the defendant's Eighth Amendment as-applied challenge was "of course premature," but that it could be "re-raised based on the proof at trial").

   1.   **Overbreadth**

Defendant first contends that the "acts as such" portion of § 912 "amounts to an overbroad prohibition on misrepresentation, in violation of the First Amendment principles set out in" Alvarez. According to defendant, the statute "criminalizes false speech, which is exactly what *Alvarez* says a statute cannot do." Defendant argues that the statute has no meaningful limitations, and thus "sweeps in substantially more false speech than is constitutionally permitted." Defendant also contends that the statute does not have a "*mens rea* requirement strong enough to pass constitutional muster under *Alvarez*."

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. 1. In Alvarez, the Supreme Court held that the Stolen Valor Act, which criminalized falsely representing having been awarded any decoration or medal authorized by Congress for military service, was an unconstitutional content-based restriction on free speech. Alvarez, 132 S. Ct. 2537. The court, however, could not agree on the appropriate level of scrutiny for the false speech at issue. The plurality held that the statute was subject to "exacting scrutiny," id. at 2543, while Justice Breyer held in his concurring opinion that intermediate scrutiny should apply, id. at 2552.

In reaching its holding, the plurality acknowledged that certain historical categories of content-based restrictions on speech have been permitted, such as speech that incites imminent lawless action, defamation, obscenity, speech integral to criminal conduct, fighting words, fraud,

4

and true threats.  Id. at 2544.  The plurality, however, rejected the government's argument that false statements have no First Amendment value, and therefore should make up a new category of unprotected speech.  Id. at 2545.  Distinguishing these traditional categories of permissible content-based restrictions with the Stolen Valor Act, the plurality stated that this was the Court's first opportunity to confront a statute "that targets falsity and nothing more."  Id.

The plurality also rejected the government's position that the Stolen Valor Act was similar to other "regulations on false speech that courts generally have found permissible," such as § 912, laws punishing perjury, and laws prohibiting the making of false statements to government officials.  Id. at 2545-46.  Distinguishing § 912 from the Stolen Valor Act, the plurality noted that the statute "protect[s] the integrity of Government processes, quite apart from merely restricting false speech."  Id. at 2546.  According to the plurality, "[e]ven if [the] statute may not require proving an 'actual financial or property loss' resulting from the deception, the statute is itself confined to 'maintain[ing] the general good repute and dignity of . . . government . . . service itself.'"  Id. (quoting United States v. Lepowitch, 318 U.S. 702, 704 (1943)).  The Court's concurring opinion similarly noted that "[s]tatutes forbidding impersonation of a public official typically focus on *acts* of impersonation, not mere speech."  Id. at 2554 (emphasis included).

Defendant argues that following Alvarez, lawful prohibitions on false speech require false speech plus some other legally cognizable harm associated with the false statement.  According to defendant, the Supreme Court recognized that this "speech plus" requirement limits the application of statutes that criminalize false speech.  Applying the principle to § 912, defendant argues that the Alvarez Court held that the statute is constitutional only to the extent

5

that it implicates fraud or speech integral to criminal conduct. Defendant contends that because the offense does not "cabin the statute's prohibition on false speech to" scenarios involving fraud or speech integral to criminal conduct, it runs afoul of the Court's holding in Alvarez.

Defendant further argues that the offense does not "provide any other meaningful limitation" on criminalizing false speech. According to defendant, because the statute's "acts as such" element has been broadly interpreted to mean nearly "any act in the pretended character," the requirement does not function as a permissible limiting principle. As such, defendant complains that the Alvarez Court's "speech plus" requirement is not satisfied by § 912, thereby making it an unconstitutional bar on false speech. The court disagrees.

Defendant's arguments rely on an over-exaggerated interpretation of Alvarez. As an initial matter, Alvarez concerned the Stolen Valor Act, not § 912, and thus the Court's discussion of § 912 is merely dictum from which no holdings can be derived. See Central Virginia Community College v. Katz, 546 U.S. 356, 363 (2006) (citing Cohens v. Virginia, 19 U.S. 264, 345 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.")); see also United States v. Tomsha-Miguel, 766 F.3d 1041, 1048 (9th Cir. 2014) ("§ 912 was not at issue in *Alvarez*").

Moreover, contrary to defendant's arguments, the plurality, concurring, and dissenting opinions all discuss § 912 as a constitutional limit on false speech, distinguishing it from the Stolen Valor Act. For example, Justice Breyer stated in his concurring opinion that "[s]tatutes forbidding impersonation of a public official typically focus on *acts* of impersonation, not mere

6

speech." Alvarez, 132 S. Ct. at 2554 (emphasis included). Likewise, the plurality noted that the statute "protect[s] the integrity of Government processes, quite apart from merely restricting false speech." Id. at 2546. The plurality also emphasized that its opinion did "not imply that any of these targeted prohibitions are somehow vulnerable." Id. at 2546.

Nor does the plurality's decision stand for the premise, as defendant contends, that § 912 is constitutional only where it is limited to instances involving fraud or speech integral to criminal conduct. Conversely, the Alvarez plurality merely noted that to the extent that § 912 and other federal statutes criminalizing false statements may implicate fraud or speech integral to criminal conduct, they are inapplicable to the court's discussion because those types of speech are already historically exempt from First Amendment protections. Id. at 2546. Again contrary to defendant's argument, Justice Breyer's concurring opinion explicitly recognized that § 912's "acts as such" element does in fact act as a limiting feature. Id. at 2554. Any act while in the pretended character is not sufficient, as defendant contends, to create liability under § 912. Instead, only an act "in keeping with the pretended character" is sufficient. See United States v. Hamilton, 276 F.2d 96, 98 (7th Cir. 1960) ("Defendant's action in wearing firearms in the Martin home was an act in keeping with his pretended [F.B.I.] character."); United States v. Robbins, 613 F.2d 688 (8th Cir. 1979) (holding that the defendant acted liked an F.B.I. agent by carrying a gun, handcuffs, and identification card); Rippee, 961 F.2d at 678 (noting that § 912 criminalizes "false impersonation of a federal official coupled with an overt act *in conformity with the pretense*") (emphasis added).

Defendant further argues that the Alvarez Court "suggest[ed] that a heightened means rea requirement may be enough to save a fraud statute criminalizing false speech from a First

Amendment challenge." According to defendant, because the intent to defraud element was eliminated from § 912,[1] the statute criminalizes far more than just fraud, thereby making it unconstitutionally overbroad. As the government argues, however, "[n]othing in the Supreme Court's holding in *Alvarez* remotely touches upon the issue of the *mens rea* requirement in Section 912, nor does the *Alvarez* decision suggest that the absence of an 'intent to defraud' *mens rea* requirement renders Section 912 . . . invalid." The Alvarez Court discussed scienter only with respect to civil fraud and defamation statutes, stating that liability under these statutes does not hinge on "falsity alone," but instead requires that "[t]he statement must be a knowing or reckless falsehood." Alvarez, 132 S. Ct. at 2545. Here, as acknowledged by Justice Breyer in Alvarez, § 912 likewise does not focus exclusively on falsity itself, but requires an act in conformity with the assumed character. Id. at 2554.

The Seventh Circuit did not confirm that there is no implicit intent to defraud requirement in the "acts as such offense." To the contrary, in Cord, the Seventh Circuit acknowledged that despite the elimination of the explicit intent to defraud requirement in § 912, "implicit in the remaining language is the requirement that the *'acts'* and *'demands'* cause a victim to follow a path he would not otherwise have taken." 654 F.2d at 492 (emphasis added). The Seventh Circuit held that, like the "acts" and "demands" versions of the offense, where a

---

[1] Prior to the revision of the penal code in 1948, § 912 criminalized impersonating a federal employee "with intent to defraud either the United States or any person." Congress, however, deleted the phrase following the Supreme Court's decision in Lepowitch, in which the Court held that "the words 'intent to defraud' in the context of this statute, do not require more than the defendants have, by artifice or deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct." 318 U.S. at 704. The Reviser's Notes to the statute stated that "[t]he words . . . were omitted as meaningless in view of" Lepowitch. United States v. Cord, 654 F.2d 490, 491 (7th Cir. 1981).

defendant has been charged with obtaining a thing of value while impersonating a federal employee, "it is logical to assume that the victim has been deceived into giving them. Id. Consequently, § 912 is not unconstitutionally overbroad.[2]

### 2. Vagueness

Defendant next argues that to the extent that § 912's "acts as such" offense is not overbroad, it is unconstitutionally vague. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008). However, the Supreme Court has held that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974). This rule applies regardless of whether the proscribed conduct is in the form of speech. Holder v. Humanitarian Law Project, 561 U.S. 1, 20 (2010) In light of this rule, a vagueness claim must be evaluated "as applied to the particular facts at issue." Id. at 18. As noted above, it is premature to entertain as-applied challenges at this early stage of the case.

---

[2] Although it is unsettled following Alvarez which level of scrutiny applies when evaluating content-based restrictions on speech, § 912 passes constitutional muster under both the plurality's exacting scrutiny standard and Justice Breyer's intermediate scrutiny test. Alvarez, 132 S. Ct. at 2543, 2552.

## B. Sufficiency of the Indictment

Finally, defendant argues that the indictment is legally insufficient because it does not provide notice of how he "acted as" a United States Marshal. An indictment is legally sufficient if it: (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions. See Fed. R. Crim. P. 7(c)(1); United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000). "An indictment is reviewed on its face, regardless of the strength or weakness of the government's case." United States v. White, 610 F.3d 956, 958 (7th Cir. 2010); see also Russell v. United States, 369 U.S. 749, 770 (1962) ("[I]t is a settled rule that a bill of particulars cannot save an invalid indictment.").

"[I]t is generally acceptable for the indictment to 'track' the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." Smith, 230 F.3d at 305. The indictment, however, still must "provide enough factual particulars to 'sufficiently apprise the defendant of what he must be prepared to meet.'" Id. (quoting Russell, 369 U.S. at 763). To accomplish this, the indictment must "provide some means of pinning down the specific conduct at issue." Id. "[T]he presence or absence of any particular fact need not be dispositive of the issue." Id.

The indictment here tracks the language of the statute, listing each element of the crime, thereby satisfying the first requirement for legal sufficiency. Defendant, however, complains that in tracking the language of the statute, the indictment fails to provide specific allegations as to the conduct he engaged in while impersonating a federal employee. Accordingly, defendant

argues that the indictment does not alert him to what specifically he must be prepared to defend against. The court disagrees.

Through the indictment, defendant is apprised of all the elements of the crime charged: that he impersonated a federal employee, namely a United States Marshal, on two occasions (on January 15, 2013, in Markham, Illinois, and on December 4, 2014, in Chicago, Illinois); and that he acted as a United States Marshal on each such occasion. This information sets out sufficient particulars to alert defendant to the nature of the charges. While the indictment does not provide factual details regarding how defendant acted as a United States Marshal, "it is [not] necessary for an indictment to allege in detail the factual proof that will be relied on to support the charges." Smith, 230 F.3d at 306. Consequently, the indictment is legally sufficient.

## CONCLUSION

For the foregoing reasons, defendant's motion (doc. 49) to dismiss the indictment is denied.

**ENTER:** **March 1, 2016**

_____
**Robert W. Gettleman**
**United States District Judge**